EPSY WHITACRE ET AL. v. BESSIE KELLY ET AL., Appellants.—134 S. W. (2d) 121.

Division One, December 13, 1939.

*John P. Moberly* and *Utz & Utz* for appellants.

*Garrett & Ruark* and *Mayer, Conkling & Sprague* for respondents.

CLARK, J.—Appeal from the Circuit Court of Buchanan County from a judgment setting aside the will of Mary Inos Lewis. The petition alleged undue influence, confidential relations and want of mental capacity, all of which was denied by the answer. The case was tried to a jury. At the close of plaintiffs' (contestants') evidence and again at the close of all the evidence, defendants (proponents) requested the court to instruct the jury to find that the paper writing introduced was the will of said Mary Inos Lewis, which requests were denied. The court's instructions withdrew from the

jury the issues of undue influence and confidential relations and submitted the case on the issue of mental capacity. The verdict, signed by nine jurors, was against the will.

Respondents have filed a motion to dismiss the appeal for alleged failure to comply with our rules. Thereafter, appellants, by our leave, filed a supplemental statement which cures any defects in their original statement. Accordingly, the motion to dismiss is overruled.

The only questions here are: (1) was there any substantial evidence to support the verdict and judgment setting aside the will? (2) was reversible error committed by counsel for plaintiffs in their argument to the jury?

As to the evidence: The will was executed about two o'clock in the afternoon of Saturday, June 27, 1936, and testator died on the following Friday, July 3. She was about seventy-two years old at death. She left no husband or descendants. For many years she had suffered from the dread disease of cancer, her physical condition during the latter days becoming pitiable beyond description. Her home was in St. Joseph, but at the date of her death and for some weeks prior thereto she was staying at the home of one of the defendants, Mrs. Bessie Kelly, in Houston, Missouri.

G. F. Romines, a banker at Houston, testified that at the request of John P. Moberly, an attorney, he and a Mr. Craig went to the Kelly home about two o'clock on Saturday, June 27; that the will, which had already been prepared, was read by Mr. Moberly to the testatrix and she was asked if that was the way she wanted it, to which she answered "Yes;" that some other talk was had with her, she was propped up in bed and signed the will and the witness and Mr. Craig signed as attesting witnesses; that, in his opinion, testator knew what property she had and how she was disposing it. (Mr. Craig was dead before the trial and his signature to the will was duly proved.)

Dr. Dillman, a practicing physician, testified that he was first called to attend Mrs. Lewis very early in the morning of June 25th; that he called on her from two to three times a day thereafter until she died; that he conversed with her from time to time and she talked rationally; that he was present when the will was executed; witness was positive that Mrs. Lewis was rational at all times; he gave a detailed list of medicine which he prescribed for Mrs. Lewis and testified that it could not have affected her mental faculties, although some of it would act upon the brain and make the patient less sensitive to stimulation.

John P. Moberly, an attorney, testified that, at the request of Mrs. Kelly's father he went to her home and was introduced to Mrs. Lewis who told him she wanted her will drawn; that Mrs. Lewis gave him full directions as to how she wanted the will written; that he then

went to his office, prepared the will, came back with the witnesses and was present when the will was executed; that, in his opinion, the testatrix had sufficient mentality to know that she was disposing of her property, the nature of her property, and who were her relatives and the natural objects of her bounty.

For the contestants, testimony was given by Epsy Whitacre (one of the plaintiffs and an aunt of testatrix), Gail Overstake, Opal Overstake, Ollie Elgin and Charles F. Whitacre.

Epsy Whitacre: she visited Mrs. Lewis on Thursday (June 25th) and every day or two thereafter; she did not talk to her; never saw her eyes open; Bessie (Mrs. Kelly) tried to talk to her, tried to arouse her; Mrs. Lewis made a noise in her throat, but witness could not understand her and thought no one else could; "I don't think she really knew I was ever in the room."

Gail Overstake: was in the room with Mrs. Lewis in the latter part of June on Friday; doesn't think she knew him, although she repeated his name so he could understand it.

Opal Overstake: visited Mrs. Lewis on Saturday, June 27 (what time in the day is not disclosed); again visited her on one day in the following week; the first visit was the longest; she touched Mrs. Lewis two or three times, but the latter did not move.

Mrs. Ollie Elgin: visited Mrs. Lewis on June 25th, 26th and on several days during the following week; on the first visit she took hold of Mrs. Lewis' hand and spoke to her; Mrs. Lewis did not open her eyes, but made a noise in her throat which witness could not understand and witness did not arouse her.

Charles F. Whitacre: saw Mrs. Lewis on June 26; was there five or ten minutes; Mrs. Kelly shook her and spoke to her; she moved her lips, but witness did not hear her speak and thinks she was unconscious.

For proponents in rebuttal, Mrs. Kelly (defendant) testified that she is a second cousin of the testatrix, Mrs. Lewis; that Mrs. Lewis came to the home of witness in the summer; that her condition became worse on June 25th after which she was confined to her bed until her death on July 3rd; witness related various conversations with Mrs. Lewis and said in her opinion she was of sound mind; witness also contradicted the testimony of plaintiffs' witnesses.

R. W. Williams (father of Mrs. Kelly) had known Mrs. Lewis forty-five years; talked with her a few times while she was ill at his daughter's home; saw nothing irrational; thinks she was of sound mind.

Mrs. R. W. Williams sat up with Mrs. Lewis the night before the will was made and the night before she died and talked with her briefly; she was present when the will was signed and thinks testatrix was of sound mind.

Mrs. Matthews, who had known Mrs. Lewis for several months and

saw her a few times during her last illness, gave her opinion that she was sane; and another neighbor, Mrs. Emma Baker, gave similar testimony.

Mrs. Jeanette Coyle sat up with Mrs. Lewis two nights before the will was made; also was there when Mrs. Elgin was and heard Mrs. Lewis carry on a brief conversation with Mrs. Elgin; in the opinion of the witness Mrs. Lewis was sane.

Mrs. Mildred Beatty, a practical nurse, was employed to care for Mrs. Lewis; she began to wait on her on June 26th and was with her until she died, heard her give directions for making the will and was present when it was executed; talked with Mrs. Lewis a number of times; saw nothing irrational and thinks she was sane.

The will was introduced in evidence. It provides for the payment of debts, erection of a monument, devises and bequeaths all property, real and personal, to Bessie Kelly and names her executrix.

We think the foregoing is a fair summary of the evidence so far as it pertains to the issue of mental capacity. If there is any substantial evidence to support the verdict and judgment we are not authorized to set them aside. [Hamner v. Edmonds, 327 Mo. 281, 36 S. W. (2d) 925; Fowler v. Fowler, 318 Mo. 1078, 2 S. W. (2d) 707; Dunkeson v. Williams (Mo.), 242 S. W. 653.] The question is as to mental capacity at the time of the execution of the will. [Berkemeier v. Reller, 317 Mo. 614, 296 S. W. 739; Hahn v. Hammerstein, 272 Mo. 248, 198 S. W. 833; Winn v. Greer, 217 Mo. 420, 117 S. W. 48; Martin v. Bowdern, 158 Mo. 379, 59 S. W. 227; Von de Veld v. Judah, 143 Mo. 348, 44 S. W. 1117; Schoenhoff v. Haering, 327 Mo. 837, 38 S. W. (2d) 1011.] Evidence as to mental condition both before and after the execution of the will is admissible. [Byrne v. Fulkerson, 254 Mo. 97, 162 S. W. 171; Proffer v. Proffer, 342 Mo. 184, 114 S. W. (2d) 1035; Erickson v. Lundgren, 37 S. W. (2d) 629; Rose v. Rose, 249 S. W. 605.] But such evidence is of no probative value unless it raises a reasonable inference as to mental condition at the time of signing the will. [Von de Veld v. Judy, supra; Schoenhoff v. Haering, supra; Kleinlein v. Krauss, 209 S. W. 933.]

There is no dispute that Mrs. Lewis was of sound mind, capable of managing her business, and that she did manage it up to June 25th. There is no direct evidence that she was of unsound mind at the time of signing the will. Five lay witnesses expressed the opinion that she was unconscious at various times both before and after the execution of the will. The testimony of Gail Overstake must be rejected as being of no probative value, because Mrs. Lewis must have been conscious as she repeated his name so he could understand it. Three of the other four witnesses said that, when they spoke to Mrs. Lewis or touched her, she responded at least to the extent of moving her lips or "making a noise in her throat." In this case, we are bound to accept as true the *facts* upon which these lay witnesses based

their opinion; but we are not compelled to accept as correct their *opinion* that the testatrix was unconscious. But, conceding that Mrs. Lewis was unconscious at the times mentioned, we cannot go further and indulge the inference that she was unconscious at another time when she signed the will. We judicially note that a person may be, unconscious one moment and fully conscious and sane shortly thereafter. The trouble with plaintiffs' case is the entire lack of any evidence that the disease from which Mrs. Lewis suffered or the medicine which was administered to her would tend to render her unconscious for any length of time, or for any time at all. If the disease or medicine did have such tendency, it was incumbent on plaintiffs to offer some proof thereof.

"Now, if the alleged incompetency of Judy arose from imbecility produced by the violence of disease, the inordinate use of drugs, coupled with the increasing infirmities and feebleness of age, still, there would be no presumption of continuity flowing from such temporary cause." [Von de Veld v. Judy, 143 Mo. l. c. 364, 44 S. W. 1117.]

We do not decide this case upon the weight of the evidence; but, in face of the positive testimony that Mrs. Lewis was sane at the time of executing the will, we are unable to hold that plaintiffs offered any substantial evidence to the contrary.

In view of the conclusions reached, it is unnecessary for us to pass upon defendants' objections to the argument of plaintiffs' counsel.

We hold that proponents made a prima facie case on the issue of mental capacity and that contestants offered no substantial evidence to the contrary. Accordingly, the judgment is hereby reversed and the cause remanded with directions to enter judgment establishing the writing as the will of Mary Inos Lewis, deceased.

All concur.