SAM NORRIS, MRS. KANN NORRIS DAVIS, ALMAR NORRIS, MRS. MARGARET NORRIS SMITHWICK, TOM NORRIS, CLIFFORD NORRIS, MRS. CHARLIE LOVVORN, JIM EDDIE NORRIS, ROY NORRIS, ANNIE MARGARET NORRIS CANTRELL, CHARLES NORRIS, WILLIE PEARL NORRIS CAFFEY, RIGGS NORRIS, MARGUERITE NORRIS, THOMAS WILLIAMS, BUNK WILLIAMS, MRS. BONNIE WILLIAMS FORHAND, HOUSTON STONE, Appellants, v. ED. H. BRISTOW and OLLIE MAY BRISTOW, Respondents.— No. 41043.—219 S. W. (2d) 367.

Division Two, March 14, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, April 11, 1949.

1178

*E. C. Hamlin, E. A. Barbour, Jr.,* and *Hal Washington* for appellants.

1180

*Roscoe C. Patterson* for respondents.

1184

[367] WESTHUES, C.—This is an action to set aside the last will and testament of W. O. Norris, deceased, [368] on the grounds of mental incapacity and of undue influence alleged to have been exercised by the beneficiaries of the will. The trial by jury resulted in a verdict upholding the will and contestants appealed from the judgment entered.

Plaintiffs, contestants, are a brother, a sister, nephews, and nieces of the testator who died leaving no descendants, father, mother, or spouse. The beneficiaries of the will, named as defendants, are Ed. H. Bristow and his wife, Ollie May, who were not related to the testator. Contestants briefed six points seeking a reversal of the judgment and a new trial. We will consider these after disposing of respondent's contention that contestants failed to produce sufficient evidence to authorize a submission of the case to a jury. This will require a statement of the case. There is a long record and we will make the statement as brief as possible.

The value of the estate involved was about $15,000, consisting of both real and personal property. The testator at the time of his death was 72 years of age. Testator, the youngest of eight children, was born on a farm near Murfreesboro, Tennessee. Two of these children survived the testator and were named as plaintiffs. Other brothers and sisters died leaving children who were joined as plaintiffs. Testator left home when he was about seventeen years of age and returned only for an occasional visit. In the year 1908, he went to Springfield, Missouri, to live and remained there or in that neighborhood until his death in December, 1946. While in Springfield, he engaged in business with one Weaver. The evidence discloses that they had made wills devising their property to each other and that they were very friendly. Weaver died and Norris acquired his property. For a number of years thereafter testator was not engaged in any particular business, but managed his property collecting rents from the tenants. On various occasions he entered into contracts for the sale of property, the contracts providing that the purchase price be paid in monthly installments. Testator collected these installments until about a month before he died. For long periods of time the testator lived alone and about February, 1946, he had a heart attack. He was taken to a hospital for an examination and after a few days, Ed. Bristow took him to Bristow's home on a farm near Springfield where testator remained until about October. During this time Bristow and testator made frequent trips to Springfield and on a number of occasions, Bristow accompanied the testator when the latter collected rents. Bristow at times would write out the receipt for the collection made. The two had been friends for many years and often went fishing and hunting together. On the 23rd day of April, 1946, testator in company with Bristow went to the law office of Harry D. Durst in Springfield where the will in question was prepared. Bris-

tow remained in the waiting room while Norris was in the private office with Durst.

The will contains only three clauses. In the first clause the testator directed that his debts and funeral expenses be paid. By the third clause Durst was appointed as executor. The second clause, disposing of property, reads as follows:

"As I have no near relatives whatsoever, and only distant ones whose names and addresses I do not know at this time, I will and bequeath, give and devise to my two closest friends, Ed. H. Bristow and Ollie May Bristow, husband and wife, Route #1, Strafford, Missouri, all of my property, real, personal and mixed, subject to the payment of my debts and funeral expenses."

A number of lay witnesses who had known Norris for many years testified that in their opinion Norris was not of sound mind in April, 1946, when the will was executed. We are mindful that such opinions are of no greater value than the reasons upon which such opinions are based. In re Nolan's Estate, 78 P. 2d (Cal.) 456, l. c. 459 (10, 11); Loehr v. Starke, 322 Mo. 131, 56 S. W. (2d) 772; Lee v. Ullery, 346 Mo. 236, 140 S. W. (2d) 5, l. c. 9 (5); Berkemeier v. Reller, 37 S. W. (2d) 430, l. c. 431 (1). The witnesses testifying in this case based their opinions on facts which were in substance as follows: that the testator often spoke of riding in airplanes, stating that he owned one, and made trips therein to Tennessee [369] to see his relatives; that he and his sister owned a cotton plantation in Tennessee which was being managed by a niece. According to a number of witnesses the testator was forgetful at times, not remembering what he had done the day before. Contestants also strongly relied upon the testator's statement in his will that he had no near relatives whatsoever and did not know the addresses of his distant relatives. Contestants maintained that they were entitled to a directed verdict because of these statements in the will, while respondents said that, in view of the circumstances and of the evidence of Mr. Durst, it was clear that the testator considered brothers, sisters, nephews, and nieces, distant relatives. There was evidence in the record that the testator did know where his kinsmen were and that a number of them lived in Murfreesboro, Tennessee, whence testator came and where he had visited the relatives. We infer from the record that at no time did the testator own a plane or any property in Tennessee. There was other evidence of minor incidents which need not be related. We are of the opinion that the trial court did not err in submitting the question of mental capacity to the jury.

As to the question of undue influence, we are of the opinion that while the evidence was not very convincing, it was sufficient to submit that question to a jury. The record contains no evidence that testator was obligated to the Bristows to any great extent. There was evidence that they were good friends of the testator and when

Norris became ill in February, he remained at the Bristow home for a number of months. The Bristows testified that during all of that time, Norris was able to go to Springfield and to attend to his business; that he went fishing and other places with Bristow. There was evidence that after Norris left the Bristow home, he made statements to the effect that he was glad to get away from there, that he did not owe the Bristows anything, and that he had paid them $100 for their trouble, and furthermore, that they were trying to get his property. Mrs. Bristow admitted that she received $100 which she considered a gift. It was in the evidence that Norris on various occasions needed the services of a lawyer and always employed the Hamlin firm. When the will was made, he went to the office of Durst in company with Bristow. Bristow denied knowing that he and his wife had been named as sole beneficiaries until after the will was found. The record contains evidence that he did know this fact prior to that time. Immediately after the death of Norris and before the will was located, Bristow went to a lawyer to employ him to protect his interest. Further evidence disclosed that Bristow objected to notifying the relatives of Norris of his death, stating that Norris had informed him that he did not want them notified. Letters, written by his niece, were found among papers of Norris indicating that Norris had corresponded with his relatives in Murfreesboro and had been on friendly terms with them. Several witnesses testified that in conversations with Norris he spoke kindly of his relatives. One witness who had had business dealings with Norris testified that Bristow suggested to him after Norris' death that he and the witness pool their interests and both share in the estate. Considering these circumstances and a number of minor incidents not mentioned here and taking into consideration that Norris was no more obligated to the Bristows than a number of other persons, a jury might well find that Bristow exercised undue influence in the making of the will. We call attention to the statements made in the will that decedent had no near relatives and did not know the names and addresses of distant relatives. These statements bear the earmarks of having been suggested by Bristow and are consistent with the position taken by Bristow after Norris' death. Furthermore, the statements do not reflect the free mind of Norris, for he did know the names of some of his kinsmen and their addresses. Undue influence may be shown by circumstantial evidence. See State ex rel. Smith v. Hughes, 356 Mo. 1, 200 S. W. (2d) 360, l. c. 363 (5).

The evidence revealed that Bristow at times wrote receipts for Norris when making collections and advised him in some business matters. Contestants urge that a [370] confidential relationship was shown. Respondents in their brief say that even if a confidential relationship existed, such fact did not cast the burden on them to show that the will was not the result of undue influence. In this

respondents are correct. The true rule was stated in Loehr v. Starke, supra.

Appellants insist that the trial court erred in giving instruction number seven which reads as follows:

"7. The court instructs the jury that the term 'natural objects of the testator's bounty' as used in these instructions has reference to descendants, surviving spouse and parents of the testator, who purely by reason of relationship may be assumed to have claims upon his bounty. Nephews, nieces, brothers, sisters and other collateral heirs, are not, because of such relationship alone, natural or normal objects of a testator's bounty."

This instruction is not without support. Note the case of In re Nolan's Estate, 78 P. 2d (Cal.) 456, l. c. 458 (9) and other California cases there cited. We find other cases holding to the contrary: Page v. Phelps et al., 143 A. (Conn.) 890; In re Walther's Estate, 163 P. 2d (Oreg.) 285. We have reached the conclusion that the instruction is erroneous. In the case of In re Nolan's Estate, supra, the California court condemned, as invading the province of the jury, an instruction which informed the jury that the beneficiary was not an heir of the testator and in the absence of evidence explaining the bequest, it would be considered unnatural because the natural objects of the testator's bounty had not received any bequests. The next of kin of the testator were nieces and nephews. The court there noted that the evidence revealed the testator "had not seen any of them and knew them only as children of his deceased brothers and sisters". We are of the opinion that the question of who come within the range of a testator's bounty depends largely upon the circumstances surrounding the testator. These circumstances may at times be such that a person related to a testator would be a natural object of his bounty to the exclusion of another within the same degree of relationship. See Smith v. Fitzjohn, 354 Mo. 137, 188 S. W. (2d) 832, l. c. 834 (8-10). We are of the opinion that ordinarily, all things being equal, the natural objects of a testator's bounty are those who unless a will exists will inherit his property. (Page on Wills, Vol. II, p. 657, Sec. 842) In this state Sec. 306 Mo. R. S. A., 1939, prescribes how property of an intestate shall descend. Under that section plaintiffs in this case, except for the will here in question, would inherit Norris' property. There is nothing in the record in this case justifying an instruction peremptorily telling the jury that plaintiffs were not the natural objects of the testator's bounty. This ruling is supported by the Page and Walther cases, supra. The Supreme Court of Connecticut in the Page case, 143 A., l. c. 893 (1-3), said:

"The appellant was the uncle and next of kin of the testator. He would take the estate of the testator in the absence of a will. He was the 'natural object of the testator's bounty,' as that term is used in

our testamentary law; it comprises whoever would take in the absence of a will because they are the persons whom the law has so designated, and in this particular, in the ordinary case, the law follows the normal condition of near relationship." The Supreme Court of Oregon followed the ruling in the Connecticut court in the Walther case, supra. See 163. P. 2d (Oreg.) l. c. 291 (6-8). The court there commented that even though contestants were the next of kin, and as such, were the natural objects of her bounty, it did not follow that the will was unnatural because the testator preferred to give her property to someone else. In Wooley v. Hays, 285 Mo. 566, 226 S. W. 842, l. c. 844 (3), the testator was a bachelor and this court referred to his relatives as being the natural objects of his bounty. As to what is meant by the term "next of kin", see 51 C. J. S. 452, an article entitled "Next of Kin".

We, therefore, hold that instruction number seven misstated the law and was also objectionable as invading the province of the jury. We desire to make a further comment as to this instruction. The trial [371] court, by instruction number five, informed the jury what was meant by "sound mind". We find the following language in that instruction:

". . . if you believe from the evidence that the testator, W. O. Norris, signed the paper read in evidence as his last will, and that at the time of doing so he had sufficient mind and memory to know that he was disposing of his property by will, to whom he was giving it, and who came reasonably within the range of his bounty," The term "natural objects of his bounty" was used in a number of instructions. If we consider instruction number seven in connection with the other instructions given, we wonder who were considered persons within the range of the testator's bounty if his relatives were excluded as a matter of law.

 Contestants asked the court to instruct the jury that when a will is made in favor of a person standing in close confidential relationship to the testator to the exclusion of the natural heirs the burden is on such person to show the will was not the result of undue influence. This instruction was properly denied. As heretofore stated, the applicable rule may be found in Loehr v. Starke, supra.

 Instruction number eight was made the basis of assignment of error. The instruction included, among other admonitions, the direction to the jury that it had nothing to do with "equity or inequity, the justice or injustice of the testamentary disposition of the property". If a jury should conclude from the evidence that a will was unjust, that fact may be considered by the jury in connection with other facts and circumstances on the issue of mental competency as well as on the question of undue influence. This court so held in Everly v. Everly, 297 Mo. 196, 249 S. W. 88, l. c. 91; Gott

v. Dennis, 296 Mo. 66, 246 S. W. 218, 1. c. 223 (3). See also O'Brien v. Collins, 53 N. E. (2d) 222, 315 Mass. 429; 68 C. J. 789, sec. 470.

Appellants urge that Mr. Durst who prepared the will was not a competent witness and that his evidence should have been excluded. To this we cannot agree. The evidence of Mr. Durst was admissible on the question of undue influence and also with reference to mental capacity. His evidence was admissible to show the circumstances surrounding the testator at the time of the execution of the will. See 68 C. J. 773; sec. 461.

Appellants also assert that the defendants as beneficiaries under the will were incompetent witnesses by virtue of Sec. 1887 Mo. R. S. A., 1939. The section provides that where one party to a contract is dead, the other party is incompetent to testify with reference to the contract made with the deceased. A legatee is not a party to a contract and may testify on questions of undue influence and of mental capacity. See 70 C. J. 280, sec. 356; Paris v. Erisman, 300 S. W. 487, 1. c. 489 (1).

The judgment of the trial court is reversed and the cause remanded for retrial. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.