REMO GUIDICY, Appellant, v. WILLIAM GUIDICY, RECO GUIDICY, PAUL GUIDICY, ELVIRA VENEGONI, AURORA DREGE, ESTHER DAY, VELDA GUIDICY, MELVA MAE GUIDICY, a minor, and MARIE VENEGONI, Respondents, No. 41959—238 S. W. (2d) 380.

Division One, April 9, 1951.

M. C. Matthes and J. Marvin Krause for appellant.

*J. W. Thurman* and *Ennis & Saunders* for respondent William Guidicy.·

*Otto R. Erker* and *Morton L. Schwartz* for respondents Reco Guidicy, Paul Guidicy, Elvira Venegoni, Aurora Drege, Esther Day, Melva Mae Guidicy, a minor, and Marie Venegoni.

[381] DALTON, J.—Action to contest the will of Maria Guidicy, deceased, on the ground of testamentary incapacity and undue influence'. .Verdict and judgment were in favor of the will and contestant has appealed.

The alleged will was executed at St. John's Hospital in St. Louis on January 18, 1948. Testatrix died January 22. The will was admitted to probate in the probate court of Jefferson County on January 26, and this action was instituted on April 19. The inventory filed in the estate showed real and personal property of the appraised value of $17,994.48.

Testatrix was admitted to the hospital on January 2 on account of a fractured left hip. She was operated on and "her hip pinned" on January 6. At the time of her admission to the hospital, testatrix was 77 years of age and she was suffering with diabetes and high blood pressure (both of long standing). She also had a chronic kidney infection and her vision was impaired. · Beginning on January

her physical condition gradually became worse and her death, on January 22, "was chiefly due to a hemorrhage of the brain." She was survived by seven children.

The alleged will was prepared by Mason Schubel, a "lawyer and abstracter," of Hillsboro. On the morning of the 18th, William Guidicy, a son of testatrix, saw Mr. Schubel and requested him to go to the hospital in St. Louis. Mr. Schubel had prepared two previous wills for testatrix. He and his wife went to St. Louis that afternoon and saw testatrix at the hospital. Two of the Guidicy children, William and Henry and their wives arrived at the hospital about one half hour later. Testatrix had sent for William to bring her last will to the hospital, but the one he brought was not the last prior will. It was, however, used as reference in making disposition of certain personal property, but, in making disposition of the residue, the new will differed materially from the prior one. The children of testatrix were excluded from the room and only testatrix, her attorney and his wife were present when the terms of the will were discussed and it was written up and signed. At one time testatrix did send for William and he was present in the room when the provision was made in the will that he be paid for his services to his mother. "He was in the room when part of it was agreed upon." While William was present, testatrix said she wanted William to be paid for services rendered her. Testatrix also told Mr. Schubel that William "had taken care of a lot of affairs for her, that he and his wife paid the bills and wrote the checks and looked after the home and things they needed. She wanted him to be paid for this." Mr. and Mrs. Schubel signed as witnesses to the will.

Both Mr. and Mrs. Schubel had known Mrs. Guidicy for some years and each testified that they "could not see any difference in her mental condition" at that time from what it had been on other occasions. She understood she was disposing of her property and how she was disposing of it. Mr. Schubel further testified that on the date the will was executed, testatrix "had mind enough to understand the ordinary affairs of life, the nature and extent of her property, who comprised the objects of her bounty and the fact the instrument she was executing gave her property to persons or classes of persons [382] named in the will in the manner in which that instrument recited." Testatrix declared the instrument to be her last will and testament and requested that Mr. and Mrs. Schubel sign as witnesses. Testatrix "was in sort of a lounge chair there along side the bed when the will was signed." Except for minor legacies to certain children and grandchildren, not material here, the will provided a one dollar legacy to contestant Remo Guidicy, "a fair and reasonable sum for services" to William Guidicy and all the rest and residue of the estate was devised and bequeathed to the children of testatrix, exclusive

of Remo, share and share alike. William was further appointed executor of the will.

Proponents' evidence further tended to show that, while the will was being written, testatrix told Mr. Schubel "that she did not want Remo (contestant) to have anything from her estate because she thought he had too much already." Mr. Schubel further testified as to previous conversations concerning the same matter. "She told me that during her husband's lifetime, his property, personal property, stocks and bonds, what he might have, was in a safe deposit box that Remo had the same right to enter as her husband, and she thought that her husband had personal property that was not accounted for. That was one of her objections. She also objected to the fact there were 175 shares of the stock of the company transferred to Remo with 50 shares in her husband's name at the time of his death, and she did not think that the stock was paid for or it was acquired in the proper method. That was her objection to Remo sharing in her estate, because she thought he had already received more than his proportionate share."

Contestant offered the testimony of Dr. Charles W. Miller, a physician who treated testatrix while she was in the hospital. His testimony tended to show the physical condition of testatrix when she was admitted to the hospital and also to show that her mental condition was "reasonably good," "all right on the 17th." "She was mentally clear when she came to the hospital." He saw her on the morning of the 18th. "She was very ill. * * * She began to develop signs of circulatory failure. She began to have rales in her chest, which meant that her heart was tiring * * * it was just a part of her illness that was not progressing favorably * * *." She was conscious but her mental condition at that time was not entirely clear. He did not think she had sufficient mental capacity to make a will. He "questioned that she could" properly know how she wanted to dispose of her property. He did not think she had a sound and disposing mind. "She was hazy and not answering questions collectively or accurately at the time." "She was not able to converse rationally or carry on a conversation * * * that is collectively." He did not see her again on the 18th. On the 19th "her course was downhill." "In all probability" a blood vessel in the brain had burst the evening of the 18th or early the 19th. "It was a slow and progressive sort of thing perhaps and it is difficult to know when it did begin." "She probably did not have any lucid intervals after sometime the night of the 18th." She was unconscious the last two or three days of her life. "She was never insane," or crazy.

In the petition, contestant had charged "that said will was obtained by the undue influence, coercion and fraud on the part of the defendants, particularly the defendant William Guidicy with whom,

for a long period before the execution of said purported will, a confidential and fiduciary relation existed * * *.'' In support of this assignment, in addition to the evidence given by proponents' witnesses, contestant offered other evidence, including a claim filed by William against the estate of testatrix wherein he claimed and was allowed $1944.00 ''for services and maintenance of property'' from January 1, 1921 to December 31, 1947. Also, a power of attorney executed by testatrix in favor of William, dated January 17, 1948 (the day prior to the execution of the will) wherein he was authorized to act for his mother, as attorney in fact, to receive debts, settle accounts, institute, prosecute and defend actions, [383] manage and control real estate, grant leases and receive rents, sell or exchange real or personal property, deposit, withdraw or invest moneys, borrow money, mortgage property, execute deeds, bills or notes, et cetera. The instrument was filed for record on January 20, 1948.

Contestant also offered the records of the hospital with reference to testatrix's physical condition during the period from January 6 to January 22. These records refer to emotional upsets due to visitors, to ''seemingly family troubles'' and, on January 19, 1948 the record shows: ''Patient very lethargic this A. M. Will not respond to conversation, but will to painful stimuli. * * * Family— again yesterday! ! !'' Dr. Miller also testified that he told her family not to talk to her about finances if they could avoid it. ''She became excited about it.''

In rebuttal, proponents offered in evidence an application signed by testatrix, as administratrix of her husband's estate, for a citation to Remo Guidicy for wrongfully withholding and concealing assets of the estate of Alfred Guidicy, deceased, and charging that Remo had wrongfully in his possession and under his control 175 shares of stock of the Guidicy Marble, Terrazzo and Tile Company of the alleged value of $17,500. The application was dated June 27, 1947. This evidence was admitted as showing testatrix's feelings and frame of mind toward Remo and as in explanation of the $1.00 provision for him in the will. Contestant then offered in evidence a copy of his return to the citation, but it was excluded by the court.

By the instructions, issues concerning the due execution of the will, the testamentary capacity of testatrix, the existence of a confidential relationship between William Guidicy and testatrix and activity on William's part in connection with the execution of the will were submitted to the jury.

Appellant first contends that ''the court erred in not granting plaintiff a new trial.'' In support of this assignment appellant contends that contestant adduced sufficient evidence (1) to show that testatrix on January 18 lacked the necessary testamentary capacity to make a will; (2) to prove ''that a confidential and fiduciary relationship existed between Maria Guidicy, the testatrix, and her son, William

1134

Guidicy, one of the beneficiaries under the will, * * * that William Guidicy actively participated in the drawing up and execution of the will''; and (3) that ''the evidence established the presumption of undue influence, coercion and fraud.'' Assuming without deciding that appellant is correct in these matters, appellant submitted the several issues to the jury and the jury found the issues for the defendant. The mere fact that contestant offered sufficient evidence to make a submissible case on the various issues of fact, which were submitted to a jury, does not tend to show the court erred in not granting contestant a new trial after verdict for defendants, There is no contention or suggestion that the trial court should have directed a verdict against the will and no such request was made at the trial. The matters referred to under this assignment wholly fail to point to any error of the trial court for which a new trial should have been granted. The assignment is overruled.

Appellant next contends that ''the court erred in admitting evidence offered by the defendants (respondents) which was improper, incompetent and highly prejudicial to the rights of the plaintiff (appellant) and particularly evidence relating to a transaction between the husband of the testatrix and plaintiff, which had no bearing on the issues in this case.'' Under this assignment appellant contends that ''counsel for defendants (respondents) was permitted to ask leading and suggestive questions and to make improper and prejudicial remarks and comments throughout the trial''; and that ''the defendants (respondents) were permitted to introduce evidence pertaining to situations and occurrences which were too remote to prove or disprove Maria Guidicy's testamentary capacity.'' In this assignment no specific evidence, questions, comments, remarks or situations are pointed out and the assignment contains no page references to the record. The assignment is wholly insufficient. School Dist. of Kansas City v. Phoenix Land and Improvement Co., 297 Mo. 332, 249 S. W. 51, 54; Kleinschmidt [384] v. Globe Democrat Pub. Co., 350 Mo. 250, 165 S. W. (2d) 620, 624.

In the printed argument appellant complains of many statements, remarks and comments of opposing counsel to which no adequate objection was made or relief asked or where the only relief asked was fully granted. No error appears as to these matters. Appellant also complains of ''the tragedy of widening the scope of inquiry'' and particularly that the application for the citation of contestant was in a different estate, than that of Alfred Guidicy, deceased; that the citation involved a different lawsuit, tried on one side to the prejudice of this appellant, with his answer to the citation excluded. Appellant further insists that the conversations between testatrix and her attorney, with reference to her reasons for limiting Remo to $1.00 ''and no more,'' which conversations were had prior to the writing of the last will, were too remote and were foreign to the

issues on trial. Appellant cites Delany v. Franciscus (Mo. App.), 226 S. W. (2d) 366, 375; Hughes v. Rader, 183 Mo. 630, 713, 82 S. W. 32; Buck v. St. Louis Union Trust Co., 267 Mo. 644, 185 S. W. 208, 212, and other cases. Appellant says that he was placed on trial before the jury; that the court permitted proponents' "testimony to build up an issue not distinguishable by a jury from the real issues in a will contest"; and that the issues properly before the jury were lost sight of and the jury confused. The trial court held the citation admissible to show testatrix's feeling toward Remo when she drew the alleged will; and that "she knew what she was doing at the time she did it," leaving him only $1.00. Contestant objected to the exhibit on the ground that it was highly prejudicial to him; that testatrix had no claim against contestant; that the claim was between him and his father's estate; and that the admission of the exhibit would force contestant to try another case before the jury. We think that the alleged conversations and reasons assigned by testatrix for "cutting off" contestant with a $1.00 legacy were competent evidence in the case; and that the same is true of the citation which shows the prior relationship of the parties.

The will, which bequeathed contestant the sum of $1.00 and no more, was before the jury. Issues as to testamentary capacity and undue influence were presented for decision and, in this connection, contestant offered and the court gave instruction 7, as follows: "The Court further instructs the jury that, in determining the issue of whether or not the said Maria Guidicy had sufficient mental capacity to execute a valid will at the time she signed the paper writing offered in evidence, purporting to be her last will and testament, *you may take into consideration the instrument itself, and all of its provisions,* in connection with all the other facts and circumstances in evidence." (Italics ours).

The $1.00 legacy to contestant was some evidence of unnatural and unjust discrimination or inequality in the disposition of testatrix's property, which fact the jury could consider with other evidence on the issues before it. Norris v. Bristow, 358 Mo. 1177, 219 S. W. (2d) 367(8); Smith v. Fitzjohn, 354 Mo. 137, 188 S. W. (2d) 832, 834; Schieberl v. Schieberl, 261 Mo. 706, 170 S. W. 897. In such situation proponents were *entitled* to submit a reasonable explanation or at least to show that the apparent discrimination was not the result of mental incapacity. Mowry v. Norman, 223 Mo. 463, 470, 122 S. W. 724; Hamner v. Edmonds, 327 Mo. 281, 297, 36 S. W. (2d) 929; 57 Am. Jur. 107, Wills, Sec. 106; 68 C. J. 452, Sec. 51. And see Maddox v. Maddox, 114 Mo. 35, 49, 21 S. W. 499. The trial court did not err in admitting either the alleged conversations or the citation to contestant.

Appellant further contends that instruction 1, given at the request of proponents, was erroneous, misleading and confusing and

further directly conflicted with other instructions. The closing paragraph of instruction 1 is as follows: "If, therefore, the jury believe and find from the evidence in this cause that the writing produced and read in evidence was formally executed by Maria Guidicy according to the above requirements of the law, and that two subscribing witnesses thereto have testified to the sanity of the said Maria Guidicy and that she was of proper age to make a **[385]** will, then the court instructs the jury that *a prima facie case in favor of the will is made out and it rests upon the contestants; that is, the plaintiff in this case, to overcome this prima facie case by substantial evidence.* By prima facie, as used here, is meant such a case as in the absence of evidence to the contrary is held to be true." (Italics ours).

Instruction 6, for contestant, advised the jury that it devolved on "the defendants to show, by a preponderance or greater weight of the evidence, that Maria Guidicy * * * had" testamentary capacity as therein defined "and unless you find and believe that the defendants have so established the issue of mental capacity, then you will find in favor of the plaintiff and against the defendants and that said paper writing is not the last will and testament of the said Maria Guidicy."

Appellant relies upon the case of Schultz v. Schultz, 316 Mo. 728, 293 S. W. 105, 109, in that case, in passing upon a similar instruction, this court said: "(1) Defendants' instruction 4 told the jury, in effect, that defendants in introducing the testimony of the two subscribing witnesses made out a prima facie case in favor of the will; that is, such a case as, in the absence of evidence to the contrary, must be held to be true, and that thereafter it rested upon the plaintiffs to overcome such prima facie case by substantial evidence. The giving of the instruction was error—plain and unadorned. It set forth a rule of procedure which the court was bound to follow in the trial of the cause, but with which the jury had no concern whatever. Griffith v. Casualty Co., 299 Mo. 426, 253 S. W. 1043. Was the error prejudicial? By both plaintiffs' instruction 1 and defendants' instruction 6 the jury were instructed in plain and unequivocal language that the burden was upon the defendants to prove by the preponderance or greater weight of the evidence that Schultz, at the time he signed the instrument purporting to be his will, possessed a sound and disposing mind and memory. The instruction in question was not in conflict with either of them. The most that can be said of its possible prejudicial effect is that, when read in connection with the other two instructions, it may have tended to so confuse and mystify the lay minds of the jurors that they were unable to tell who had the burden of proof. It is an ancient dogma of appellate practice that all error is presumed to be prejudicial, and the doctrine has never been cast into the discard by this court through any formal pronounce-

ment. Nevertheless, we have in recent years, in conformity with both the letter and spirit of what is now section 1513, R. S. 1919, refused to reverse judgments unless the appellant or plaintiff in error was able to show not only that error had been committed, but that the error was one 'materially affecting the merits of the action.' From a careful consideration of the record as a whole it does not appear to us that appellants were prejudicially affected by the giving of the instruction under review.''

Respondents rely upon the well established rule stated in Larey v. Missouri-Kansas-Texas R. Co., 333 Mo. 949, 64 S. W. (2d) 681, 684 and McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. (2d) 37, 40, to the effect that all instructions must be read and construed together; that where a series of instructions thus taken together contain a complete exposition of the law and cover every phase of the case, there is no prejudicial error; and that when taken and construed together, they harmonize and clearly and specifically require the finding of all essential elements, then any indefinite, ambiguous, and misleading language in the plaintiff's instruction is hereby cured.

In the Schultz case there were two instructions Nos. 1 and 6, clearly and definitely placing the burden of proof on proponents to establish testamentary capacity. Such is not the case here. Further, we think there was a clear conflict between instructions 1 and 6, as given in this case, and that the effect of instruction 1 (stating as it does that ''it rests upon the contestants; that is, the plaintiff in this case, to overcome this prima facie case by substantial evidence'') was to confuse and mislead the jury. Lampe v. Franklin Am. Trust Co., 339 Mo. 361, 96 S. W. (2d) 710, 720; Dove v. Atchison, Topeka & Santa Fe R. Co., 349 Mo. 798, [386] 163 S. W. (2d) 548, 550; State ex rel. United Mutual Ins. Ass'n. v. Shain, 349 Mo. 460, 162 S. W. (2d) 255, 262. We hold that the giving of instruction 1 was prejudicially erroneous.

Appellant assigns error on the giving of instruction 5 and it is contended the instruction is erroneous and conflicted with instruction 9. Proponents' instruction 5 dealing with undue influence closed with these words: ''and such influence must have been *exerted upon* and controlling her during *all* the time she was engaged in making and executing her will.'' (Italics ours). Contestant's instruction 9, dealing with undue influence, contained this sentence: ''It is not necessary that the undue influence, if any, should *have been exerted at the very time* of the execution of the will, but if such influence was previously exercised and caused or tended to cause the execution of the will at the time and in the manner it was executed, then such undue influence may be considered by you in determining whether or not such will was the result thereof, * * *.'' (Italics ours).

Respondents insist that both instructions are correct. Respondents say: ''Appellant's instruction numbered 9 merely made the same

assertion in another manner. * * * If proper consideration is given to the language of the two instructions it will be seen that instruction numbered 9 given on the part of appellant is not in conflict with instruction numbered 5 given on the part of respondents, but instruction numbered 9 actually was more favorable to appellant than it was to respondents." Respondents further say that instruction 9 attempts to explain to the jury that "the influence must be present at all times, but that the person engaged in the activity of influence need not continuously be engaged in such influence."

We think that instruction 5 was erroneous, in conflict with instruction 9 and clearly prejudicial. Instruction 5 erroneously "stated the law to be that undue influence to invalidate a will must be exerted at the time of the execution of the will." Clark v. Powell, 351 Mo. 1121, 175 S. W. (2d) 842, 849(21); Kaechelen v. Barringer (Mo. Sup.), 19 S. W. (2d) 1033, 1039(15).

In the event of another trial, instruction 3 given on behalf of respondents should be modified to conform to the law as stated in Smith v. Fitzjohn, supra; Norris v. Bristow, supra (219 S. W. (2d) 367, 371).

Respondents' motion to dismiss the appeal for alleged failure of appellant to comply with Rule 1.08(a) (2) is overruled.

The judgment is reversed and the cause remanded. *Hollingsworth* and *Hyde, JJ.,* concur; *Conkling, P. J.,* concurs in result.