241 S.W.2d 893 (1951)
ROTHWELL et al.
v.
LOVE et al.
No. 42164.
Supreme Court of Missouri, Division No. 2.
July 9, 1951.
Rehearing Denied September 10, 1951.
George A. McNulty, Doris J. Banta, Robert S. Kilker, St. Louis, for appellants Carter, Bull & McNulty and Dubail & Judge, St. Louis, of counsel.
W. Jack Moore, Joseph T. Hersby, St. Louis, Philip A. Foley, Clayton, for respondents.
WESTHUES, Commissioner.
Plaintiffs filed this suit to contest the validity of the purported last will and testament of James F. Rothwell, deceased. Mental capacity was the principal issue. A trial in the Circuit Court of St. Louis County, Missouri, resulted in a verdict upholding the will. The trial court granted a new trial and the following defendants appealed: Bethesda General Hospital, Christian Hospital, and St. Louis Union Trust Company.
The new trial was granted on the grounds stated in assignments XIII and XIV of the motion. These assignments pertain to the ruling of the trial court concerning the evidence of Dr. Roy A. Walther with reference to the testator's condition in May, 1945. The doctor testified that the testator was suffering from a senile condition. We shall consider the question of whether the trial court erred after we dispose of the contention presented by appellants, proponents of the will, that the evidence did not justify the submission of the case to a jury.
The testator Rothwell died on January 31, 1947. The paper writing purporting to be his last will and testament was executed on October 8, 1946, at the home of Mr. and Mrs. Chester A. Love. Mrs. Love was his niece. Rothwell was 83 years of age. His wife had died in 1934. He left no children. The value of his personal estate was about *894 $11,600. He also owned two parcels of real estate valued at about $8,000. By his will Rothwell provided specific bequests of small amounts ranging from $10 to $500 to his relatives, brothers, sisters, nieces, and nephews. Some bequests were also given to his wife's relations. Chester A. Love and his wife with whom testator lived for about two years before his death received a bequest of $2,000. A $500 bequest was made to Christian Hospital and a $2,000 bequest to a friend. The remainder of testator's property was given to Bethesda-Dilworth Memorial Home of St. Louis County, Missouri. After Rothwell's wife died he lived at various places including the Roosevelt Hotel and with his relatives, with the Loves where the will was executed, with Mr. and Mrs. Foster, and at the home of Mr. and Mrs. Fogassey. The testator had many nieces and nephews.
The evidence disclosed that Rothwell had executed twelve or thirteen wills. The first was executed in 1926. The death of his wife and other events were the causes of changing a number of his wills. The purported will in question was prepared by Mr. Henderson, an employee of the Union Trust Company. Mr. Henderson testified that Rothwell had made changes in his own handwriting on a will that had been executed in September, 1946; that the will in question was prepared from the former will with the changes indicated. He testified that he witnessed the will and that those present were Rothwell and the two other witnesses who signed the will as such. Henderson and the other two witnesses to the will testified that Rothwell was up and about and was of sound mind. Henderson who had known Rothwell for about ten years stated testator was a man of normal business ability. A Dr. Meyer testified that he had been the personal physician of Rothwell from May, 1943, to the day of his death; that Rothwell in his opinion was a man of sound mind until the last ten days of his life when he was in a state of coma. He testified further that Rothwell used intoxicating liquor to some extent, suffered with arteriosclerosis and some other ailments not uncommon to aged people. Many witnesses testified that Rothwell was a man of sound mind and able to take care of his business affairs.
The contestants introduced a number of lay witnesses, the greater number of whom were nieces and nephews. We have examined the record and have failed to find where these witnesses testified as to any conduct on the part of testator that would justify or support these witnesses' stating the testator was of unsound mind. To illustrate, one witness, Mrs. Alice Foster, testified that the testator lived at her home for about four years after September, 1936; that he often cried and her husband helped him in his business; that in 1937, Rothwell asked her to take him to California to visit relatives; that she made the trip. She stated that when they reached California, he refused to stay with his relatives and insisted on living at a motor court; that she and Rothwell stayed at a court occupying separate rooms; that one morning she awoke and found that Rothwell was getting into her bed; that she "went out the other side" and thereafter she kept her door locked. It was further shown in evidence that Rothwell later filed suit against the husband of this witness to collect a note of a few hundred dollars. Mrs. Foster was not mentioned in the will. Mrs. Foster testified further that Rothwell had trouble with a man named Collins at the bar of the Roosevelt Hotel; that he threw a glass of whisky at Collins and that Collins tore off Rothwell's tie and shirt collar. Elmer Campbell, a nephew, testified that when he was home on a furlough in 1944, he visited Rothwell and he seemed to have a hangover; that Rothwell offered him $500 to kill a man (meaning Collins). Other witnesses, contestants in the case, testified that on a number of occasions when they visited Rothwell, he did not at first recognize them.
The will in question was executed October 8, 1946. Frederick J. Richt, a nephew, testified that on October 7 or 8, 1946, he and his wife were at the Love home where Rothwell was staying; that at the time Rothwell's sister, Mrs. Stevens, a minister, Reverend Jones, Mrs. Fogassey, and her daughter Catherine, and Katie Weiss were also there; that Rothwell was in bed and did not know them; that he called the witness *895 Henderson; that later they left the room and the minister who remained said some prayers.
Mr. and Mrs. Love testified the above occurred on December 13, 1946, the day before Rothwell was sent to the hospital where he remained until his death. Reverend Jones and Mrs. Fogassey also stated that it was on December 13 and that they were called because Rothwell had become very ill.
On June 1, 1946, Rothwell was admitted to the St. Louis County Hospital. The record of the hospital showed the following notation: "Patient unable to give any coherent history, and nephew who accompanied him is of no help except that patient has been unable to walk until last few days." A witness Dr. Ishii testified that he was an intern at the hospital at that time and he examined Rothwell and found him to be rational.
Dr. Robert E. Keaney, a witness for contestants, testified as a neuro-psychiatrist. In answer to a hypothetical question containing all of the apparent eccentricities of the testator as testified to by the witnesses, Dr. Keaney stated that in his opinion testator was of unsound mind and had been so since 1927. On cross-examination he stressed the fact that testator was incoherent when admitted to a hospital on June 1, 1946. He also emphasized the evidence given by Mrs. Foster as to the occurrence at the motor court in California. He testified that from the hospital records it was his opinion Rothwell was suffering from senile psychosis and therefore of unsound mind.
We have related the most serious matters as testified to by contestants' witnesses concerning the question of Rothwell's capacity to execute a will. Taking it all together, we find that it does not add up to substantial evidence that Rothwell did not have mental capacity to make a will on October 8, 1946. In Smith v. Fitzjohn, 354 Mo. 137, 188 S.W.2d 832, loc. cit. 833, 834 (3, 4), this court en banc said: "There can be no submissible issue of testamentary incapacity without some evidence of such incapacity at the time the will was executed.
Evidence, not too remote, of mental unsoundness either before or after the will's execution is admissible, provided it indicates that such unsoundness existed at the time the will was made. Schoenhoff v. Haering, 327 Mo. 837, 38 S.W.2d 1011; Whitacre v. Kelly, 345 Mo. 489, 134 S.W.2d 121; Hennings v. Hallar, 347 Mo. 827, 149 S.W.2d 338; Von de Veld v. Judy, 143 Mo. 348, 44 S.W. 1117."
Dr. Keaney's opinion based wholly upon facts stated in the hypothetical question did not add anything to the evidence of the lay witnesses. For example, the doctor placed great stress upon the fact that the hospital record disclosed Rothwell could not give a coherent history. Are persons to be judged insane because an impatient clerk at a hospital was of the opinion the person could not give a coherent history of his illness? We think not. If so, then in this case the nephew who accompanied Rothwell was also of unsound mind. Again, is a man to be declared of unsound mind because of an incident such as was alleged to have occurred at the motor court in California? We think not. We reviewed the question in Nute v. Fry, 341 Mo. 1138, 111 S.W.2d 84, loc. cit. 87(4). We held that a doctor's opinion based wholly upon a hypothetical question in circumstances such as were presented in this case was of no value. We there said: "If an individual's sanity is to be determined upon an opinion expressed by a doctor who has never seen the individual, but who bases his opinion upon a hypothetical question containing only the seemingly eccentric and foolish things of the individual's life, then indeed very few of us, if any, would be adjudged sane."
The proponents of the will introduced an abundance of evidence that Rothwell was of sound mind. Evidence given by the witnesses to the will was to the effect that Rothwell on the day he signed the will met them "at the door (of his own room) fully clothed" and then sat down "in a rocking chair"; that he understood what he was doing. No evidence was introduced to the contrary.
On cross-examination Dr. Keaney was asked if in the circumstances surrounding the making of the will, as testified to by the *896 witnesses thereof, the testator could have been suffering from senile psychosis. He answered in the affirmative. He was then asked:
"Q. On what do you base that opinion, doctor? A. On the fact sometimes in senile psychosis there are remissions; they will not have themwill have a temporary improvement.
"Q. And he was sane at that time if he was in remission, doctor? A. Evidently he was."
We rule that the record does not contain substantial evidence that testator was of unsound mind at the time he signed the alleged will in question.
Was the trial court justified in granting a new trial because of the ruling on the evidence offered by witness Dr. Roy A. Walther? We think not. Dr. Walther did not testify that in his opinion Rothwell was of unsound mind. He stated that he treated Rothwell about May, 1945; that he saw him four times; that he had lost his notations and was testifying entirely from memory. His testimony was that Rothwell was then suffering from a senile condition. There were many objections made to the questions asked. At one point, the court commented, "Just a moment: The objection is made that the questions are leading. The objection is sustained. You ask the questions and let the doctor answer." Finally, the question was asked, "What was his condition?" He answered, "He had what we call, and my diagnosis was, senile dementia. That meansthe term `Dementia' means he has lost his will; he doesn't remember; he doesn't recollect things." Objection was then made that the witness was not qualified as a neurologist. The objection was sustained. Later contestants made the following offer of proof: "Plaintiff offers to prove by witness Dr. Walters (Walther) that from his experience with some hundreds of cases of senility as testified to by the doctor, and that from his physical findings and his observations of the testator, James F. Rothwell, deceased, that testator was suffering from senile dementia, as a consequence of which he was of unsound mind, and unable to realize the nature of the transaction of making a will, and the will in question particularly; that he was unable to determine the nature of, or to know the nature and extent of his property to be disposed of; that he was unable to recognize or to know the natural objects of his bounty." The objection to this offer was properly sustained. The question of whether a testator whose will is in dispute had sufficient mentality to realize the nature of the transaction of making the will in question and whether he was able to know the nature and extent of his property are questions for a jury to decide and not the subjects of expert opinion. Baptiste v. Boatmen's National Bank of St. Louis, Mo.Sup., 148 S.W.2d 743, and cases there cited. In Heinbach v. Heinbach, 274 Mo. 301, 202 S.W. 1123, loc. cit. 1131, this court said, "A witness is not to be permitted to express an opinion upon the questions directly in issue, and thus invade the province of the jury. Herein it was for the jury to find whether the testator had sufficient memory and mental capacity to comprehend who his children were, to understand the nature and extent of his property, and to know to whom he desired to give it." If Dr. Walther's evidence had been admitted it would not have made a case for the jury on the question of whether Rothwell was of unsound mind at the time he made his will. Dr. Walther treated Rothwell in May, 1945. He was of the opinion Rothwell suffered from senile dementia. The will was written in October, 1946. Contestants through Dr. Keaney, an expert on the subject, testified that a man suffering from senile psychosis or senile dementia may at times be of sound mind.
We hold the contention of the proponents of the will to the effect that contestants did not introduce substantial evidence authorizing the submission of the case to a jury should be sustained.
The cause is, therefore, remanded to the trial court with directions to set aside the order granting a new trial, to reinstate the verdict of the jury upholding the will, and to enter judgment accordingly.
It is so ordered.
BOHLING and BARRETT, CC., concur.
*897 PER CURIAM.
The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All concur.