**Judy Ann MILUM, Plaintiff–Appellant,**

v.

**Beth MARSH, Personal Representative of the ESTATE OF Eugene D. LACEY, deceased, Elsie E. Funkhouser, Commerce Bank, N.A., Trustee, Jeremiah W. Nixon, Attorney General of the State of Missouri, Defendants–Respondents.**

No. 23841.

Missouri Court of Appeals, Southern District, Division Two.

July 18, 2001.

Motion for Rehearing and Transfer to Supreme Court Denied Aug. 9, 2001.

Application for Transfer Denied Sept. 25, 2001.

235

Donald W. Ingrum, Allman, Ingrum, Wilson & Akers, L.L.C., Branson, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Huyen T. Pham, Tracy E. McGinnis, Patrick M. O'Leary, Asst. Attys. Gen., Jefferson City, for respondent Attorney General.

Joseph L. Hensley, Springfield, for respondent Elsie Funkhouser.

J. Richard Owensby, Springfield, for respondent Beth Marsh.

RAHMEYER, Judge.

Judy Ann Milum ("Appellant") brought suit to contest the self-proving will of her legal father, Eugene D. Lacey ("Lacey").

The trial court held the will to be valid and found in favor of the beneficiaries of the will ("Respondents"). We affirm.

On July 19, 1984 Lacey executed a will in the presence of two witnesses pursuant to the provisions of § 474.337,[1] the statute allowing for self-proving wills.[2] Charles Wantuck, an attorney in Springfield, Missouri, notarized the will and, in conformance with § 437.337, signed and attached a self-proving certificate to the will. Although Lacey named Appellant in the will, he left nothing to her. He left the majority of his estate to a charitable trust.

Appellant admits that § 474.337 was properly followed and the will is a self-proving will, but contends that the beneficiaries failed to present a prima facie case of due execution and testamentary capacity. Specifically, Appellant argues that the self-proving statute was enacted so that wills could be admitted to probate with ease in the absence of a will contest. Appellant contends that once the will contest action was filed, the judgment admitting the will to probate was vacated and the burden was back on the beneficiaries to establish a prima facie case of due execution and testamentary capacity. Appellant contends this is a case of first impression concerning whether or not the enactment of § 474.337 changed the requirement for a prima facie case in a will contest action.

At trial both of the witnesses to the will testified and identified their own signatures. Neither witness knew Lacey nor did they have an independent recollection of Lacey coming into the bank where the will was executed and witnessed. Mr. Wantuck is deceased. There were no other witnesses regarding the signing of the will. There was no other identification of Lacey or his signature at the time of execution. Appellant contends that there was insufficient evidence to show whether the person who executed the will was really Lacey or whether Lacey had testamentary capacity. Appellant argues if the self-proving will did not make a prima facie case of due execution and testamentary capacity, then Respondents have failed to meet their burden of proof.

■■■ In a court-tried case the judgment of the trial court will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *KJC*

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. Section 474.337 states:
   A written will may at the time of its execution, or at any subsequent date, be made self-proved, by the acknowledgment thereof by the testator and the witnesses, each made before an officer authorized to administer oaths under the laws of this state, and evidenced by the officer's certificate, under official seal, attached or annexed to the will in form and content substantially as follows:
   THE STATE OF _____
   COUNTY OF _____
   I, the undersigned, an officer authorized to administer oaths, certify that _____, the testator, and the witnesses, whose names are signed to the attached or foregoing instrument, having appeared together before me and having been first duly sworn, each then declared to me that the testator signed and executed the instrument as his last will, and that he had willingly signed or willingly directed another to sign for him, and that he executed it as his free and voluntary act for the purposes therein expressed; and that each of the witnesses, in the presence and hearing of the testator, signed the will as witness and that to the best of his knowledge the testator was at that time eighteen or more years of age, of sound mind, and under no constraint or undue influence.
   In witness whereof I have hereunto subscribed my name and affixed my official seal this ___ day of _____, 20__.
   (Signed)_____
   (SEAL)_____
   (Official capacity of officer)

*Development Corporation v. Land Trust of Jackson County*, 6 S.W.3d 894, 896 (Mo. banc 1999). On an appeal from a court-tried case, we defer to the trial court's findings of fact, given the trial court's superior ability to judge the credibility of witnesses. *Brawley v. McNary*, 811 S.W.2d 362, 365 (Mo. banc 1991). The power to set aside a judgment on the ground that it is "against the weight of the evidence" must be exercised with caution and only with the firm belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[3]

█ Appellant claims that our dicta in *Hugenel v. Estate of Keller*, 867 S.W.2d 298 (Mo.App. S.D.1993) supports her assertion that the self-proving clause of § 474.337 does not satisfy the burden of showing due execution and testamentary capacity. The issue in *Hugenel* was the trial court's finding that the decedent did not have testamentary capacity to make a will. This court noted that the standard of review was of particular significance. *Id.* at 302. The decedent had been continuously declared incompetent by orders of the probate court. The trial court, noting the statutory presumption that the decedent was incompetent at the time of the making of the will because of the prior judgments of incompetence, found that the defendants had not overcome the presumption of incapacity. *Id.* at 305. This court upheld the trial court's finding; however, as an additional reason for supporting the finding of the trial court, this court stated:

> There is some indication that the self-proving clause contained in the will may not have any effect beyond expediting admission to probate. . . .
>
> . . . .

Assuming, without deciding, that the self-proving clause of the will provides a prima facie showing of not only due execution but also testamentary capacity. . . .

*Id.* at 305. Appellant now contends that because neither witness at trial could testify that the person who signed the will was, in fact, Lacey, the self-proving clause had no effect and Respondents have failed in their burden of proving due execution.

In response, Respondents cite to *Stroup v. Leipard*, 981 S.W.2d 600 (Mo.App. W.D. 1998) for the proposition that a prima facie case is made for due execution if the will is self-proving under § 474.337. The issue in that case was whether the trial court erred in amending an earlier judgment to admit a self-proving will into probate. The defendants admitted that there were no issues regarding due execution or the decedent's testamentary capacity regarding the earlier will. In support of the decision upholding the admission of the earlier self-proving will into probate, the court noted:

> It is not clear in Missouri whether a self-proved will establishes a prima facie case for due execution and also a prima facie case for testamentary capacity. However, our courts have resorted to the Commissioners' Comments accompanying the Uniform Probate Code when interpreting statutes based on that code. . . . An analysis of the statute and the provisions of the Uniform Probate Code and Comments upon which it was based convinces this court that the self-proving certificate creates a prima facie case of due execution of the will.

*Id.* at 605 (citations omitted). The court, after noting that the legislature could have prohibited the use of self-proving wills in will contest proceedings but did not do so,

---

**3.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear in essentially the same form, in Rule 84.13(d).

stated that the plain and ordinary meaning of the language of § 473.065 permitted the admission of self-proved wills to probate without the necessity of further proof without limitation, and, thus, a prima facie case had been made in the will contest case. *Id.* at 606. The court did not address whether a prima facie case of testamentary capacity had been made because that issue was admitted in the pleadings.

The issue squarely in front of this court is whether, in a will contest, a self-proving will establishes a prima facie case that the will was duly executed and that the decedent had the testamentary capacity at the time of the will's execution. We find that it does.

We agree with the sound reasoning of the court in *Stroup* in relying upon the Commissioner's Comment to § 2-504 of the Uniform Probate Code when it holds that a self-proving will makes a prima facie case for due execution. The same reasoning applies to whether a self-proving will should make a prima facie case for testamentary capacity. The court in *Stroup* explains its reasoning, which we also follow on the issue of testamentary capacity. The plain and ordinary meaning of the language of § 473.065 permits the admission of a self-proved will to probate without the necessity of further proof without limitation. *Id.* at 606.

This view is in conformance with fifteen states who have adopted the Uniform Probate Code in its totality.[4] Of these states, only Nebraska has specifically addressed whether a self-proving will constitutes prima facie evidence of testamentary capacity; it held that it does. *Achterberg v. Farmers State Bank & Trust Company,*

212 Neb. 490, 323 N.W.2d 827, 833–34 (1982). Texas has not adopted the Uniform Probate Code completely; however, its courts have held that a self-proving will is prima facie evidence of the testator's testamentary capacity. *See Guthrie v. Suiter,* 934 S.W.2d 820, 829 (Tex.Ct.App.1996)(stating, "A self-proving will with proper affidavits requires no further proof of testamentary capacity and may be admitted to probate without further evidence.").[5] It appears no other states have resolved the issue.

As a matter of law, we hold that the admission to probate of a self-proving will provides a prima facie case of due execution and of testamentary capacity. Once Respondents made the prima facie case by introducing Lacey's self-proving will into evidence, the burden shifted to Appellant to produce substantial evidence to rebut the prima facie case of due execution and testamentary capacity. *Hugenel,* 867 S.W.2d at 304–305. The burden of proof, however, remained with Respondents as proponents of the will throughout the case. *Id.* at 305. Appellant failed to introduce any evidence to rebut the prima facie case of due execution. Appellant's motion for a directed verdict was properly denied, and substantial evidence supports a finding of due execution.

Appellant did present evidence concerning Lacey's testamentary capacity. Appellant argues that the trial court erred in finding that Lacey had testamentary capacity because Lacey did not know the persons who were the natural objects of his bounty and did not appreciate his natural obligations to those persons. Specifi-

4. Those states are Alaska, Arizona, Florida, Hawaii, Idaho, Maine, Michigan, Minnesota, Montana, Nebraska, New Mexico, North Dakota, South Carolina, South Dakota, and Utah.

5. The Texas statute the court cited in support, Texas Probate Code Annotated, article 59 (1996), is substantially similar to our § 474.337.

cally, Appellant maintains that Article IV of Lacey's Last Will and Testament indicates that Lacey did not recognize Appellant (Judy) as his daughter at the time he made his will. The pertinent provision of the will is as follows:

> Article IV: I mention Judy Ann Lacey (present name unknown) so that it will not be thought that she was forgotten, she being a daughter of my ex-wife and having used my name in the past, but to her I leave nothing.

The evidence from the trial established that Lacey was married to Appellant's mother at the time of Appellant's conception and birth. Lacey reacted violently to the pregnancy and denied being Appellant's father. Although he and Appellant's mother were divorced and he was adjudicated as the father of Appellant, he refused to voluntarily pay any child support or to visit with Appellant. He never had contact with her. Apparently, Lacey denied being the father of Appellant from the time of the pregnancy until his death.

Appellant contends that this denial of paternity is evidence that Lacey did not have testamentary capacity because he did not know the person, Appellant, who was the natural object of his bounty and did not appreciate his natural obligations to that person. Appellant offered no evidence of Lacey's mental state in 1984. Appellant relies on the denial of paternity as her sole proof that Appellant did not have testamentary capacity. This is not sufficient to rebut Lacey's case of testamentary capacity.

Respondents' evidence indicates that Lacey was a loner, an eccentric, and did not mesh well with society. Lacey ran his own electronic repair business, lived by himself in a residential building behind the business, and took care of himself. Only one friend attended his funeral; however, he maintained a friendship with his personal representative for years. She had known him since 1955 and observed his demeanor in 1984, the year in which the will was executed. She described him as brilliant and capable and said that he appeared to understand the ordinary affairs of life. Even Appellant testified that her mother had always considered Lacey brilliant.

Appellant cites to *Everly v. Everly*, 297 Mo. 196, 249 S.W. 88 (1923) to support her position that a failure to recognize a child and an unjust disposition of property is sufficient evidence of a lack of testamentary incapacity. In *Everly* the testator described the child of his first marriage, "a son of my first wife, reputed to be my son" and left him five dollars in his will. *Id.* The court in *Everly* reversed and remanded a jury decision in favor of the proponents of a will and against the alleged son on the basis that the instructions to the jury excluded from their consideration the "unjust" or "unnatural" disposition of the property. *Id.* at 91. The court noted other instructional errors in reversing the judgment and remanding it. The court then, determined that the unnatural disposition of the testator's assets was a factor to be considered by the fact finder. We have no reason to believe that the court below did not consider the unnatural disposition of the property in determining whether Lacey had testamentary capacity.

Appellant also cites to *Gott v. Dennis*, 296 Mo. 66, 246 S.W. 218 (Mo.1922) to support the proposition that Lacey lacked testamentary capacity. *Gott* was a case decided upon the issue of undue influence of family members and not testamentary capacity; however, Appellant indicates that the factual situation is similar to the factual situation before us now and clarifies the language concerning testator's ability to intelligently weigh and appreciate his obligations toward the natural objects of his bounty. The court in *Gott* indicated that the "harsh, unnatural and paradoxical treatment of his wife and child

in his lifetime ... is a circumstance which tends to discredit the maker's testamentary capacity." *Id.* at 225. Again, we have no indication that the trial court did not consider the treatment of Lacey's ex-wife and child or the unnatural disposition of the property in its decision.

■ Likewise, *McGrail v. Schmitt*, 357 S.W.2d 111 (Mo.1962), cited by Appellant, does not assist Appellant in that the issue in *McGrail* was whether a submissible case had been made and properly submitted to the jury. The court, in an extensive review of the evidence, found the cause was properly submitted to the jury and upheld the jury verdict. In the present court-tried case, the trial court heard all of the evidence and decided that Lacey had testamentary capacity at the time of the making of his will. We defer to the trial court's determinations of the credibility of the witnesses. *See Brawley*, 811 S.W.2d at 365. The denial of paternity and the disposition of property were certainly factors the trial court could consider. Substantial evidence supports the judgment of the trial court.

■ We hold that Appellant did not rebut the prima facie case that Lacey had testamentary capacity when he executed his will in 1984.

> The established rule in Missouri is that in the trial of a will contest where the issue of mental incompetency is at issue, the proponents of the will are required to show that at the time the will was executed the testator was of sound mind. The contestants, to make a case for a jury, are then required to come forward and introduce substantial evidence to prove that the testator did not have the mental capacity to make a will.

*Maurath v. Sickles*, 586 S.W.2d 723, 728 (Mo.App. E.D.1979)(citing *Houghton v. Jones*, 418 S.W.2d 32, 39 (Mo.1967))(emphasis omitted). The tests are mental ca-

pacity and free agency. *Id.* at 732. When these exist the testator has the right, "to make an unreasonable, unjust, injudicious will; and his neighbors have no right, sitting as a jury, to alter the disposition of his property simply because they may think the testator did not do justice to his family connection." *Id.* at 732 (quoting *Maddox v. Maddox*, 114 Mo. 35, 21 S.W. 499, 502 (1893)).

There was sufficient evidence for the trial court to find that Lacey did know who Appellant was, knew that she claimed to be his daughter, and weighed and appreciated his natural obligations to her. He simply chose to ignore those obligations throughout his life. As reprehensible as his conduct may have been, as long as he had the mental capacity to make the will, he was free to dispose of his property as he saw fit. For the reasons set forth herein, we affirm the judgment of the trial court.

BARNEY, C.J., and PREWITT, J., concur.