**Evelyn JOLLY, Natural Mother and Next Friend of Ashley Rae Jolly, minor, Plaintiff–Appellant,**

v.

**Steven R. CLARKSON, Defendant–Respondent.**

No. 26118.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 28, 2005.

Application for Transfer Denied
Feb. 22, 2005.

Application for Transfer Denied
April 5, 2005.

Donald W. Ingrum, Allman, Ingrum, Wilson & Akers, L.L.C., Branson, MO, for appellant.

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, MO, for respondent.

KENNETH W. SHRUM, Judge.

Plaintiff seeks reversal of a judgment that rejected her effort to void two beneficiary deeds made by Rollen H. Clarkson ("Grantor"). Plaintiff claims Grantor lacked the requisite mental capacity to make the deeds. Grantor's son ("Defendant") was the beneficiary named in the deeds. Plaintiff maintains the trial court used the wrong "mental capacity standard" to decide this case adversely to her. Plaintiff also urges reversal because the trial court failed to make requested findings of fact that Plaintiff claims were relevant. This court affirms.

Plaintiff is the mother of Ashley Rae Jolly ("Ashley") who was born February 5, 1991. Plaintiff was not married when Ashley was born. After Grantor died intestate

on November 15, 2000, the probate division of the Taney County circuit court ruled Grantor was Ashley's father. That adjudication is final and unappealed.

In addition to Ashley, Grantor sired other children, namely Defendant, born November 1, 1956 (legitimate), and Sue Burdette ("Sue"), born November 5, 1948 (illegitimate).

On two separate occasions in 1995, Grantor executed and recorded beneficiary deeds. These deeds described various tracts of land owned by Grantor. Defendant was named as beneficiary in both instruments, and Grantor's designation of Defendant as beneficiary was not revoked before Grantor's death.

In 2003, Plaintiff, acting as Ashley's next friend, sued Defendant seeking a declaration that the subject beneficiary deeds were void. She alleged Grantor was not of "sound mind" when he made the deeds in that he "(1) was not able to know the persons who were the natural object of his bounty, as he did not recognize Ashley as his daughter, or he (2) could not intelligently weigh and appreciate his natural obligations to Ashley."

Evidence in this case came from Plaintiff, her daughter Ashley, Grantor's son (Defendant), Grantor's daughter (Sue), and Michael Merrell (Grantor's attorney). Detailed accounts of this evidence are given later as we analyze Plaintiff's various claims of trial court error. Suffice it to say, Plaintiff's primary evidentiary effort was to prove Grantor never openly acknowledged Ashley as his daughter.

After making extensive findings of fact and conclusions of law, the trial court ruled Plaintiff had not met her burden of proving Grantor lacked the requisite mental capacity to make the subject deeds. This appeal followed.

## STANDARD OF REVIEW

As with most other non-jury cases, review of a suit to set aside a deed because of alleged mental incapacity of the grantor is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976). *Robertson v. Robertson,* 15 S.W.3d 407, 411 (Mo.App. 2000). Thus, the judgment is to be affirmed unless it is not supported by substantial evidence, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* An action to set aside a deed is an extraordinary proceeding in equity requiring evidence to support that result that is clear, cogent, and convincing. *Id.* at 419[6]. A judgment in a case such as this is presumed correct and the appellant has the burden of proving it erroneous. *Id.* at 411[2]. We defer to the trial court's assessment of credibility. *Id.* at 411[3].

## DISCUSSION AND DECISION

Plaintiff's first point maintains the trial court erred when it did not void the subject deed. She argues the court used the wrong standard of mental capacity in making its adjudication. Specifically, Plaintiff claims the court mistakenly used the standard of mental capacity required of the grantor of a deed given for consideration, whereas it should have used the standard of mental capacity required of the grantor of a deed in which no consideration is given, i.e., a gift deed.

One premise underlying Plaintiff's first point is that the applicable mental capacity test for the grantor of a beneficiary gift deed should be the same as that applied to the execution of wills. Although this court finds no Missouri case so holding when the challenged instrument is a beneficiary deed, that certainly is the rule often expressed when the questioned conveyance is by warranty or quit claim deed. *See, e.g.,*

*McFarland v. Brown*, 193 S.W. 800, 804 (Mo.1917).

The requisite mental capacity that a grantor must have to make a valid gift deed has been expressed as follows:

> "The law differentiates between the mental capacity required of grantor making a deed as a part of the arms-length business transaction and the mental capacity required when grantor is receiving but the satisfaction of heart and mind which comes from benefiting those near and dear to him. In the latter instance if he has sufficient mental capacity to know the extent of his property, *his relatives and their respective claims on his bounty*, the demands of the law have been satisfied."

*McCoy v. McCoy*, 360 Mo. 199, 227 S.W.2d 698, 704 (1950) (emphasis supplied). *See also Jones v. Thomas*, 218 Mo. 508, 117 S.W. 1177, 1186–87 (1909); *Robertson*, 15 S.W.3d at 415. No logical reason exists for using a different mental capacity standard for the maker of a beneficiary gift deed than for the maker of other gift deeds. We hold, therefore, that the mental capacity test espoused in *McCoy* attends here.

With this finding made, we look further into Plaintiff's "wrong mental capacity standard" claim. In developing this argument, Plaintiff concedes there is case law holding that the mental capacity required to make a valid business deed is higher than that required to make a valid gift deed. *See, e.g., Storm v. Marsh*, 418 S.W.2d 179, 185 (Mo.1967); *Gruetzmacher v. Hainey*, 373 S.W.2d 45, 50[4] (Mo.1963). However, Plaintiff in her reply brief says that "begs the question." [1] She maintains that the gift deed grantor mental capacity standard has elements not in the business deed grantor standard, specifically, the gift deed grantor must have sufficient mental capacity to (1) know the persons who are the natural objects of his bounty and (2) "intelligently weigh and appreciate his natural obligations to those persons and know [he was] giving his property to the persons mentioned in the [deed]" at that time. *See In re Estate of Hague*, 894 S.W.2d 684, 688 (Mo.App.1995) (holding these are two factors in a four-part testamentary capacity analysis).

With this as her premise, Plaintiff then uses Points II, III, and IV in her brief to argue that the trial court's alleged error (using the wrong standard) is obvious in that the trial court's findings of fact and conclusions of law addressed only two of the factors in the *Hague* analysis, i.e., a finding that Grantor "understood the ordinary affairs of life and knew the nature and extent of his property at the time the ... deeds were executed." According to Plaintiff, the trial court's error lies in the fact it made no findings on the two additional parts of the *Hague* analysis, i.e., the two factors first mentioned above.

We pause here to note Plaintiff timely requested that the trial court make findings of fact on these controverted issues.[2] Such a request is authorized by Rule

---

1. This remark responds to Defendant's argument that since the business deed grantor's mental capacity must be higher than that of a gift deed grantor, Plaintiff could not have been prejudiced when the trial court used the higher mental capacity standard in reaching its conclusion.

2. As to each beneficiary deed, Plaintiff requested that these findings of fact be made:

> "When [Grantor] executed [each] beneficiary deed dated [specifying the dates of each] did ...
> "A. he recognize Ashley ... as one of the natural objects of his bounty, and
> "B. if he recognized Ashley ... as one of the natural objects of his bounty, could he intelligently weigh and appreciate his natural obligations to Ashley....?"

73.01(c).[3]  Plaintiff's second, third, and fourth points urge reversal and remand because the trial court did not honor that request.  Since deciding the Rule 73.01(c) issues first will either render Point I moot, or shorten our analysis of Point I, we address Points II, III, and IV at this time.

Rule 73.01 governs cases tried without a jury.  In pertinent part, subsection (c) thereof provides that "[i]f a party so requests, the court shall . . . prepare and file a brief opinion containing a statement of the grounds for its decision . . . and shall[ ] include in the opinion findings on the controverted fact issues specified by the party."

Ordinarily, a case will be remanded for production of findings if the court did not comply with a properly drafted and timely filed findings request filed per Rule 73.01(c).  *Hammons v. Ehney,* 924 S.W.2d 843, 850[17] (Mo.banc 1996); *In re Marriage of Flud,* 926 S.W.2d 201, 204 (Mo.App.1996).  However, there is an exception to this rule.  Specifically, an appellate court can *affirm* a judgment without remand despite a trial court's noncompliance with Rule 73.01(c) *if* the trial court record supports affirmance.  *Hammons,* 924 S.W.2d at 850[17].[4]  "This is based upon the idea that the complaining party has failed to show prejudice."  *Id.* Alleged error only leads to reversal if it is both error *and* prejudicial.  *Bank of America, N.A. v. Stevens,* 83 S.W.3d 47, 56 (Mo.App.2002).  Rule 84.13(b), Supreme Court Rules (2004).[5]

Our examination of this record will be made with the above principles in mind, as well as the following.  Plaintiff has the burden of proving Grantor lacked the mental capacity to make a valid deed *at the very time the deeds were signed.* McCoy, 227 S.W.2d at 704; *Schneider v. Johnson,* 207 S.W.2d 461, 466[4] (Mo.1948); *Lastofka v. Lastofka,* 339 Mo. 770, 99 S.W.2d 46, 54 (1936).  Moreover, "the proof to justify setting a deed aside must be clear, cogent and convincing." *Robertson,* 15 S.W.3d at 415[17].  This means that the court should be "clearly convinced of the affirmative of the proposition to be proved."  *Id.* "Evidence, to be clear and convincing, must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true."  *Id.* at 415[18].

Here, lawyer Merrell testified he prepared the April 7, 1995, beneficiary deed and that it was notarized in his office on that date.  He had no recollection, however, of preparing the September 11, 1995, deed and noted that it was not notarized in his office.  Neither the person who prepared the September 1995 deed, nor the notary public who notarized it, nor any other person who saw or talked with Grantor on September 11, was called as a witness.

Regarding the April 7 deed, Merrell testified he had "meetings" with Grantor before it was prepared; that he "discussed [with Grantor] alternatives for his estate plan[;]" and Grantor then "brought in

---

**3.**  All rule references are to Supreme Court Rules (2003), unless otherwise indicated.

**4.**  The *Hammons* court cautioned, however, that when a trial court fails to make findings of fact requested per Rule 73.01(c), "[a]n appellate court may not *reverse* a decision below upon its own determination of facts."  924 S.W.2d at 850.

**5.**  Rule 84.13(b) reads: "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action."

deeds" which Merrell used to prepare the April 7 beneficiary deed. When Merrell was asked about Grantor's appearance at those meetings, Plaintiff's counsel objected to the relevancy of such evidence, stating: "We conceded in our pleadings that [Grantor] understood the ordinary affairs of life and ... knew the nature and extent of his property. We're not quarrelling with that." At this point, defense counsel withdrew the question and quickly ended his examination of Merrell. On cross-examination, Merrell was asked if Ashley's name was brought up during his dealings with Grantor. Merrell answered, "The name did not come up at all."

Merrell's testimony, standing alone, is not clear, cogent, and convincing evidence that, as of the date each deed was signed, Grantor lacked the mental capacity to understand the objects of his bounty and "intelligently weigh and appreciate his natural obligations" to those persons. To the extent Plaintiff intends to argue to the contrary, such argument is rejected.

On the other hand, evidence before and after the date the deeds were signed is relevant in deciding if Grantor had the requisite mental capacity to execute them on a given day. *Robertson*, 15 S.W.3d at 415. In apparent reliance on this principle, Plaintiff tried to show Grantor's mental incapacity by evidence of Grantor's denials of paternity, his failure to adequately support Ashley, and his failure to mention Ashley to attorney Merrell during their "estate planning" discussions.

To illustrate, Plaintiff repeatedly testified that Grantor often expressed doubts whether Ashley was his child. According to Plaintiff, Grantor's avowed reason for denying paternity was that he had undergone a vasectomy. We are not persuaded, however, that evidence of Grantor's frequent denials of paternity proved his mind was so weak and impaired that he forgot

about Ashley when the deeds were made, or that he lacked the mental capacity to know Ashley was a person claiming to be his daughter. In part, we rely on *Milum v. Marsh ex rel. Lacey*, 53 S.W.3d 234 (Mo.App.2001), to reach this conclusion.

In *Milum*, a daughter was named in her deceased father's will, but received no bequest thereunder. She challenged the will, claiming he lacked testamentary capacity to make the instrument. The evidence was that decedent was married to the mother when the child was conceived, yet he reacted negatively to the pregnancy and throughout his life denied paternity. When decedent and the child's mother divorced, he was adjudged the father of the child. Despite a decree that ordered decedent to pay child support, he never did so, nor did he ever visit or otherwise contact his daughter. In his will, decedent characterized his child as the "daughter of my ex-wife[,]" noted that she "used my name in the past," and declared he was mentioning her "so that it will not be thought that she was forgotten." *Id.* at 239. This recital ended by leaving her nothing. *Id.* In challenging the will, the daughter alleged decedent "did not know the person [her] who was the natural object of his bounty and did not appreciate his natural obligations to that person[;]" consequently, he lacked testamentary capacity. *Id.* We rejected that argument, holding that decedent's consistent denial of paternity and lack of contact with and support for her "is not sufficient [evidence] to rebut [decedent's] case of testamentary capacity." *Id.*

In relying on *Milum*, we do not ignore Plaintiff's argument that factual distinctions between it and this case render it inapposite. Thus, the will at issue in *Milum* specifically recited that the decedent knew a person existed who claimed to be his daughter, whereas the beneficiary deeds here contain no such recital about

Ashley. However, unlike *Milum* where the deceased father always denied paternity, there is evidence in this record to support a finding that Grantor knew Ashley was his daughter to whom he owed moral and legal obligations, and he acknowledged this fact in private (particularly to Plaintiff), yet used his vasectomy claim and selective denials of paternity as a ploy to avoid his moral and legal responsibility to Ashley and Plaintiff. For instance, when Ashley was five years old, Plaintiff told Ashley that Grantor was her father. In making that disclosure Plaintiff also told Ashley that Grantor "didn't want anyone to know that." This is an implicit, albeit private acknowledgement by Grantor to Plaintiff that he recognized Ashley as his daughter.

At trial, Plaintiff testified Grantor never acknowledged paternity, yet a document Plaintiff signed at the Division of Child Support Enforcement ("DCSE") contradicted that testimony. The administrative agency claim form posed this question: "Has the alleged father ever claimed the [child] as his?" Plaintiff answered, "Yes." Apparently, the trial court resolved this factual inconsistency adversely to Plaintiff, which was its prerogative. *Greentree Properties, Inc. v. Kissee*, 92 S.W.3d 289, 292 (Mo.App.2002).

The affidavit of Sue Burdette, Grantor's other illegitimate daughter, contained this testimony:

> "I remember telling [Grantor] that he must treat Ashley right. [Grantor] would say, 'She might be mine,' and I told him, 'You know good and well that she is your daughter.' I would get frustrated with him because he would 'flip flop' back and forth on the issue of his paternity.
>
>     . . . .

> "I did have conversations with [Plaintiff] where we discussed [Grantor's] acknowledgment of Ashley as his daughter. [Plaintiff] told me [Grantor] understood that Ashley was his daughter but he did not want any formal legal proceedings started to prove it."

This is another unambiguous admission by Plaintiff (this time to Sue) that Grantor knew and comprehended that Ashley was his daughter.

Grantor's apparent goal of avoiding "formal legal proceedings" regarding Ashley (as related by Plaintiff to Sue) is confirmed by the following. In October 1998, Ashley needed dental work performed. That need prompted Plaintiff to seek financial assistance from the Division of Family Services ("DFS"). Her DFS application triggered referral to the DCSE. When DCSE notified Grantor of Plaintiff's claim that he was Ashley's father, Grantor dealt with the matter by telling Plaintiff he would help get Ashley's teeth fixed if Plaintiff would discontinue the DCSE case. Plaintiff agreed, the DCSE case was dropped, and Grantor paid for Ashley's dental work.

The following also bears on the issue of Grantor's mental capacity, i.e., his awareness of Ashley as his daughter and his responsibilities to her. Grantor occasionally gave Ashley money, as well as other gift items; he talked with Ashley about her future and what she wanted to do with her life; he frequently took Ashley with him as he did farm chores and other activities; Grantor accepted gifts from Ashley, on some of which she wrote, "to Dad, love you[;]" Grantor kept a "growth chart" for Ashley at his home, i.e., where he kept track of how tall she grew from year to year; and Grantor named Ashley as beneficiary on a $10,000 insurance policy.[6]

---

6. According to Plaintiff, Grantor told her it    was a $10,000 life insurance policy. Howev-

Other relevant evidence included the fact that Ashley often called Grantor "Dad" and he usually responded to that salutation, whether in private or public.[7] Moreover, Grantor had photographs of Ashley in his bedroom.

Finally, in conversations with Defendant, Grantor stated he might have children other than Defendant. Moreover, Defendant testified he had seen a photograph of Sue at Defendant's house that contained the word "Dad." According to Defendant, the photograph prompted this conversation with Grantor:

> "I said 'Boy, you've got kids coming out of the woodwork now, haven't you,' and he laughed ... and said 'Yeah, you never know who's going to come up next,' or something to that nature. He didn't acknowledge it. He didn't deny it, but he was chuckling about it, and insinuated to me that, 'Yeah, I might have even more.'"

All of the foregoing is evidentiary support for the trial court's implicit finding that Grantor had sufficient mental capacity (1) to know Ashley was his daughter, (2) to know Ashley had claims on his bounty, and (3) to intelligently weigh and appreciate his natural obligations to Ashley. This and other evidence in the record also supports the inference that Grantor's mental capacity to make valid beneficiary deeds continued to the date he signed each deed.

Accordingly, although the trial court erred in not making the requested findings of fact, no prejudice resulted because the trial court record supports affirmance. *See Hammons*, 924 S.W.2d at 850. Evidence of Grantor's selective denials of paternity does not compel a finding that he lacked mental capacity to make a deed, especially when the denial evidence was contradicted by evidence that he privately acknowledged Ashley as his daughter and treated her, at least in some respects, as his daughter. *See Milum*, 53 S.W.3d at 239. Points II, III, and IV are denied.

■■■ We return now to Plaintiff's Point I assertion that the court's alleged use of the wrong mental capacity standard mandates reversal. Plaintiff's insistence that the trial court never considered whether Grantor had sufficient mental capacity to understand the objects of his bounty and intelligently weigh and appreciate his natural obligations to those persons is fully refuted by two conclusions of law that the trial court put in its judgment:

> "The mere fact that a grantor does not recognize a parent-child relationship does not of itself render a grantor without mental capacity to execute a deed. See *Webb v. St. Louis County National Bank*, 551 S.W.2d 869 (Mo.App. E.D. 1977).
>
> "Our Southern District Court of Appeals has specifically held that the denial of paternity by the natural father of a child is not sufficient to prove a lack of testamentary capacity. *Milum v. Marsh*, 53 S.W.3d 234.... The court in *Milum* [held] that 'the denial of paternity as her sole proof that Appellant did not have testamentary capacity ... is not sufficient....' *Id.* at 239."

We conclude from this that the trial court fully understood what mental incapacity elements Plaintiff had to prove, knew the legal standard, and correctly applied it. We reject Plaintiff's arguments to the contrary.

---

er, after Grantor died, Plaintiff learned it was only an accident policy. Since Grantor's death was not an accidental one, no benefit was paid.

7. Only one incident was mentioned in evidence where Grantor asked Ashley not to address him as "Dad."

Accordingly, we find the trial court did not commit reversible error when it ruled that Plaintiff "failed to meet her burden of proof, by clear and convincing evidence, that [Grantor] lacked the requisite mental capacity to validly execute the beneficiary deeds." Point I is denied. The judgment of the trial court is affirmed.

BARNEY, J., and BATES, C.J., Concur.